UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>United States of America</u>

    v.                        Criminal No. 18-cr-042-LM
                                    Opinion No. 2020 DNH 108
<u>Victoria Duford</u>


## O R D E R

Defendant, Victoria Duford, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that her underlying health conditions combined with the threat of contracting COVID-19 while incarcerated at Federal Correctional Institution ("FCI") Danbury warrant her release.  Alternatively, Duford requests a judicial recommendation to the Bureau of Prisons ("BOP") that she be released to home confinement for the remainder of her sentence.  The government objects to her release.  The court held a telephonic hearing on Duford's motion on June 25, 2020, at which she made a statement.

### STANDARD OF REVIEW

A court may grant so-called "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A).  The statute provides, in relevant part, that:

> [T]he court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

> bring a motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request by the
> warden of the defendant's facility, whichever is
> earlier, may reduce the term of imprisonment (and may
> impose a term of probation or supervised release with
> or without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors set forth
> in section 3553(a) to the extent that they are
> applicable, if it finds that—
>
>> (i)  extraordinary and compelling reasons warrant
>>      such a reduction
>
>> . . .
>
>> and that such a reduction is consistent with
>> applicable policy statements issued by the
>> Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); see also U.S.G. § 1B1.13

(sentencing guidelines policy statement on compassionate

release).

Where, as here, a motion for compassionate release is

properly before the court, the court must determine if the

defendant is eligible for release.  A court may reduce a term of

imprisonment under the compassionate release provision if it:

(1) finds that extraordinary and compelling reasons warrant the

reduction; (2) finds that the defendant is not likely to be a

danger to the safety of any other person or the community; and

(3) considers the sentencing factors outlined in 18 U.S.C. §

3553(a).  See 18 U.S.C. § 3582(c)(1)(A); U.S.G. § 1B1.13; see

also United States v. Sapp, No. 14-CR-20520, 2020 WL 515935, at

*2 (E.D. Mich. Jan. 31, 2020); United States v. Willis, 382 F.

Supp. 3d 1185, 1187 (D.N.M. 2019).  The defendant has the burden
of showing that she is entitled to a sentence reduction.  United
States v. Ebbers, No. S402CR11443VEC, 2020 WL 91399, at *4
(S.D.N.Y. Jan. 8, 2020).  And the court has "broad discretion in
deciding whether to grant or deny a motion for sentence
reduction."  United States v. Paul Gileno, No. 3:19-CR-161-
(VAB)-1, 2020 WL 1307108, at *2 (D. Conn. Mar. 19, 2020)
(internal quotation marks omitted).


## BACKGROUND

In April 2018, Duford was arrested for her participation in
a conspiracy to traffic methamphetamine.  She stipulated to
detention at that time.  In July 2018, Duford pleaded guilty to
one count of conspiracy to distribute 50 grams or more of
methamphetamine in violation of 21 U.S.C. §§ 841(a)(1),
(b)(1)(A)(viii) and 846.  In June 2019, this court sentenced
Duford to 43 months of imprisonment and five years of supervised
release.  Since her sentencing, Duford has been serving her
sentence of imprisonment at FCI Danbury in Connecticut.  Her
projected release date is February 16, 2021.

On May 6, 2020, Duford filed a pro se motion for
compassionate release.  Doc. no. 53.  The court then appointed
her counsel.  The court denied Duford's motion without prejudice
because Duford had not demonstrated that she had exhausted her

3

administrative remedies as required by the compassionate release
provision.  Doc. no. 56.  On June 12, 2020, with the assistance
of counsel, Duford filed a supplemental motion for compassionate
release.  Doc. no. 59.  Her motion alleges that Duford has
several medical conditions that put her at high risk of
experiencing severe illness from COVID-19, and that the
conditions at FCI Danbury increase the likelihood that she will
contract the virus.

## DISCUSSION

Duford requests compassionate release under 18 U.S.C. §
3582(c)(1)(A).  Alternatively, she requests that the court
provide a judicial recommendation to BOP that she serve the
remainder of her sentence on home confinement.  The court will
consider each of these requests in turn.

I.  <u>Compassionate Release</u>

Regarding Duford's request for compassionate release, the
court must first consider whether Duford has established an
extraordinary and compelling reason for her early release.
Duford argues that she can meet this threshold based on the
combination of her underlying medical conditions and the
conditions of incarceration at FCI Danbury.  Specifically, she
has submitted medical records demonstrating that she has a
combination of medical conditions, including chronic viral

4

hepatitis C.  Doc. no. 59-7 at 4, 15; doc. no. 16 at 19.  Duford
also contends that there is a serious outbreak of COVID-19 at
FCI Danbury and that BOP is not taking adequate precautions to
prevent the spread of the virus and keep inmates safe.

A. <u>Applicable Legal Test</u>

The Commentary to the Sentencing Guidelines Policy
Statement regarding compassionate release identifies four
categories of "extraordinary and compelling reasons" that
justify a sentence reduction: (1) the defendant's medical
condition; (2) the defendant's age; (3) the defendant's family
circumstances; and (4) a catchall category.  U.S.S.G. § 1B1.13,
App. Note 1.  Under the policy statement, a medical condition
constitutes an "extraordinary and compelling reason" if the
defendant is suffering from a terminal illness, or has a serious
physical or medical condition, cognitive impairment, or
deteriorating physical or mental health due to age "that
substantially diminishes the ability of the defendant to provide
self-care within the environment of a correctional facility and
from which he or she is not expected to recover."  U.S.S.G. §
1B1.13, App. Note 1(A)(i)-(ii).  The catchall category
encompasses any "extraordinary and compelling reason other than,
or in combination with" the defendant's medical condition, age,
or family circumstances.  See U.S.S.G. § 1B1.13, App. Note 1(D).

In the context of the current pandemic, courts have held that a generalized risk of infection by the virus is not, by itself, sufficient to constitute an extraordinary and compelling reason warranting release.  See United States v. Ramirez, No. CR 17-10328-WGY, 2020 WL 2404858, at *3 (D. Mass. May 12, 2020) (collecting cases).  "On the other hand, a combination of health and age factors that put a prisoner at a substantially higher risk due to COVID-19 along with a documented risk of the disease in the facility where the prisoner is incarcerated may demonstrate extraordinary and compelling reasons to reduce the prisoner's sentence."  United States v. Bischoff, No. 17-CR-196-JD, 2020 WL 2561423, at *2 (D.N.H. May 19, 2020) (collecting cases in support).

B. Current Status at FCI Danbury

Here, there is no doubt that FCI Danbury has been hit hard by the virus and that an active outbreak of COVID-19 exists at the facility.  On April 3, 2020, Attorney General William Barr issued a memorandum directing BOP to prioritize the use of home confinement to combat the spread of COVID-19.[1]  In that memorandum, Attorney General Barr identified FCI Danbury as a

---

[1] Atty. Gen. William Barr, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19, (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.

facility that was experiencing "significant levels of infection"
and directed BOP to prioritize FCI Danbury and two other
facilities in its use of home confinement.[2]  On May 12, 2020, the
District Court for the District of Connecticut recognized in
Martinez-Brooks v. Easter that there was a "serious outbreak" at
FCI Danbury.  Martinez-Brooks v. Easter, ___ F. Supp. 3d ___,
2020 WL 2405350, at *20 (D. Conn. May 12, 2020) (class action
habeas suit on behalf of all inmates at FCI Danbury, alleging a
claim of deliberate indifference against BOP for failure to use
all available avenues to reduce prison population to protect
against COVID-19).  At that point in time, 205 inmates had been
tested for COVID-19; 69 inmates and 56 staff members had tested
positive.  Id. at *6.  That court also observed that these
figures might "underrepresent the true number of COVID-19
infections at FCI Danbury."  Id. at *20.

Now, over a month later, it appears that FCI Danbury still
has an active outbreak, but it is much less widespread than a
month ago.  BOP's website represents that, in total, 95 inmates
and 61 staff members have recovered from the virus, and one
inmate died from the virus.[3]  BOP's website also indicates that

---

[2] Id.

[3] BOP, COVID-19, https://www.bop.gov/coronavirus/ (last
visited June 26, 2020).

there is currently only one inmate infected with the virus at
FCI Danbury.[4]

Evidence of an active outbreak giving rise to a risk of
infection is, however, not enough alone to warrant the
extraordinary relief of early release.  Duford must also show
that she suffers from a medical condition or conditions that
place her at high risk for severe illness from the virus.  See
Bischoff, 2020 WL 2561423, at *2; Ramirez, 2020 WL 2404858, at
*4-5.  She has not done so.  None of her medical conditions meet
or approximate those listed by the Centers for Disease Control
and Prevention ("CDC") as putting an individual at high risk for
severe illness from COVID-19.[5]

C. Defendant's Medical Condition

Duford contends that hepatitis C is a liver disease and
that liver diseases fall within the high-risk category.  The CDC
guidelines currently state that someone with liver disease
"might be at an increased risk for severe illness from COVID-

---

[4] Id.

[5] CDC, People of Any Age with Underlying Medical Conditions,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/people-with-medical-conditions.html?CDC_AA_
refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-
ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last
visited June 26, 2020).

19."[6]  And, it is true that hepatitis C can affect the liver.[7] However, CDC guidance also states that the CDC currently has "no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19."[8]  Thus, on its face, CDC guidance does not currently list hepatitis C as a high-risk condition.

The government has bolstered this general guidance with the opinion of a physician who has studied Duford's medical records. Dr. J. Gavin Muir opines that Duford is not at higher risk for developing severe illness from COVID-19 because "there is no evidence from her bloodwork that the [hepatitis C] virus is having a deleterious effect on her liver."  Doc. no. 55-2 at 2. Dr. Muir's opinion is based on the fact that in October 2019, Duford had a "positive viral load for her [h]epatitis C," "normal liver function tests [and] normal complete blood count." Id. at 1.  Dr. Muir also observed that Duford reported to BOP that she has always been asymptomatic regarding her hepatitis C and that she has never received treatment for it.  Id. at 1, 14.

---

[6] Id.

[7] CDC, Hepatitis C, https://www.cdc.gov/hepatitis/hcv/index.htm (last visited June 25, 2020).

[8] CDC, What to Know about Liver Disease and COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last visited June 25, 2020).

The court defers to Dr. Muir's medical opinion and finds that Duford's hepatitis C does not place her in the high-risk category.  Compare United States v. Hilliard, No. 17 CR 35-01 (VB), 2020 WL 3182778, at *2 (S.D.N.Y. June 15, 2020) (denying compassionate release where defendant's hepatitis C was asymptomatic and he had refused treatment for that condition in the past), with United States v. White, No. 2:17-CR-00198-4, 2020 WL 3244122, at *4 (S.D. W. Va. June 12, 2020) (finding extraordinary and compelling reason for release where defendant had hepatitis C, BOP had designated defendant as high-risk inmate, and FCI Elkton had "massive outbreak" of COVID-19 cases).  Duford's other medical conditions, though significant, do not meet or approximate the CDC's listed high-risk conditions.  The court therefore finds that Duford has failed to establish an extraordinary and compelling reason supporting her release.  Because Duford has not established an extraordinary and compelling reason, the court need not discuss the other factors impacting the compassionate release analysis.  Duford is not eligible for early release.


II.  Judicial Recommendation to BOP

The court next turns to Duford's alternative request that the court provide a judicial recommendation to BOP that Duford serve the remainder of her sentence on home confinement.  Under

10

18 U.S.C. § 3624(c)(2), BOP has the authority "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Under this provision, Duford would not typically be eligible for home confinement at this point in her sentence. But Congress recently amended the time restrictions of § 3624(c)(2) in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). That amendment gave Attorney General Barr the power to "lengthen the maximum amount of time for which the Director [of BOP] is authorized to place a prisoner in home confinement." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 236 (March 27, 2020). Attorney General Barr has directed BOP to utilize this expanded home confinement authority to protect vulnerable inmates and prevent or control the spread of the virus.[9]

The decision whether to exercise this authority in a particular case and release a defendant to home confinement lies entirely with BOP; the court lacks the power to order that a prisoner be released to home confinement, even under the CARES Act. See 18 U.S.C. §§ 3621(b), 3624(c)(2); Tapia v. United States, 564 U.S. 319, 331 (2011); United States v. Barnes, No.

---

[9] Atty. Gen. William Barr, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19, (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.

16-20308, 2020 WL 2733885, at *2 (E.D. Mich. May 26, 2020).  The
court may, however, make a judicial recommendation to BOP that a
defendant be placed on home confinement.  See 18 U.S.C. §
3621(b)(4); United States v. Doshi, No. 13-CR-20349, 2020 WL
1527186, at *1 (E.D. Mich. Mar. 31, 2020); United States v.
Best, No. 5:16-CR-236-FL, 2019 WL 5608856, at *1 (E.D.N.C. Oct.
30, 2019).  In evaluating whether to give such a recommendation,
the court considers the non-exhaustive discretionary factors
laid out in Attorney General Barr's Memo (e.g., danger posed by
inmate's release, conduct while in prison, and the inmate's
vulnerability to COVID-19).[10]

The court finds that Duford is an ideal candidate to be
released to home confinement under the expanded home confinement
authority of the CARES Act.  Duford has a lengthy criminal
history and was involved in a serious drug-trafficking
conspiracy.  But, since her incarceration, she has been a model
inmate and put forth a tremendous effort to rehabilitate
herself.  During her detention pending sentencing, she completed
193 hours of classes, including the North Country Crossroads and
Decisions program, individual counseling, and Living in Balance
and Seeking Safety, among others.  Doc. no. 31-3 at 4-9.  Duford

---

[10] Atty. Gen. William Barr, Prioritization of Home
Confinement as Appropriate in Response to COVID-19 Pandemic
(Mar. 26, 2020), https://www.bop.gov/resources/news/
pdfs/20200405_covid-19_home_confinement.pdf.

volunteered to serve as a speaker for the Operation Impact
Program, which visits schools in Grafton County to educate
students about making positive choices.  Duford also worked over
2,000 hours as a cook in the kitchen and as part of the
janitorial staff.  Id. at 9.

    While in federal prison, she has continued this behavior.
She works as a vegetarian cook.  She is continuing her education
by taking additional courses and is pursuing a certification in
nutrition.  And Duford has not committed any disciplinary
infractions while in federal prison.  Based on this significant
turnaround in Duford's behavior, the court finds that Duford
would not pose a danger to the community if released to home
confinement.  Indeed, the government conceded at the hearing
that Duford would not pose a danger if released.

    Duford's medical conditions also favor her release to home
confinement.  Although not serious enough to warrant the
extraordinary relief of compassionate release, Duford's medical
conditions make her more vulnerable to the dangers of COVID-19
than a healthy inmate.

    Finally, Duford's projected release date weighs in favor of
her release to home confinement.  Her projected release date is
February 16, 2021—fewer than eight months away.  Duford also
represents that her "home confinement date" is October 10, 2020,

13

meaning that, under the pre-CARES Act law, she would be eligible
for home confinement as of that date.  To put it simply, Duford
is very close to being released on conditions regardless of the
pandemic.  The court finds that this fact combined with the
others detailed above makes Duford an excellent candidate for
immediate release to home confinement.  Her release would not
only protect her from infection but would also help reduce the
overall population at FCI Danbury making the remaining inmates
at the facility safer.

In sum, although the court finds that Duford does not
qualify for the extraordinary relief of early release under §
3582(c)(1)(A), the court recommends that BOP place her on home
confinement for the remainder of her sentence.  Duford's request
for a judicial recommendation to BOP that she be placed on home
confinement is granted.


## CONCLUSION

For the foregoing reasons, Duford's supplemental motion for
compassionate release (doc. no. 59) is granted in part and
denied in part.  The court grants Duford's request for a
judicial recommendation that BOP place her on home confinement

14

for the balance of her sentence but denies without prejudice her request for compassionate release.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 30, 2020

cc:  Counsel of Record
     U.S. Probation
     U.S. Marshal

15